1  LEXINGTON LAW GROUP
   Eric Somers, State Bar No. 139050
2  Ryan Berghoff, State Bar No. 308812
   503 Divisadero Street
3  San Francisco, CA 94117
   Telephone: (415) 913-7800
4  Facsimile: (415) 759-4112
   esomers@lexlawgroup.com
5  rberghoff@lexlawgroup.com

6  Attorneys for Plaintiff
   JEFFREY FREEMAN

7

8

9

10              **UNITED STATES DISTRICT COURT**

11          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12

13

14  JEFFREY FREEMAN, on behalf of himself and    Case No. _____
    all others similarly situated,
15                                               **CLASS ACTION COMPLAINT**
                     Plaintiff,
16                                               **DEMAND FOR JURY TRIAL**
          v.
17
    INDOCHINO APPAREL, INC.; INDOCHINO
18  APPAREL (US), INC.; and DOES 1 through 100,
    inclusive,
19
                     Defendants.
20

21

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

1    Plaintiff Jeffrey Freeman ("Plaintiff"), on behalf of himself and those similarly

2    situated, based on information, belief and investigation of his counsel, except for information

3    based on personal knowledge, hereby alleges:

4    **INTRODUCTION**

5    1.    "Most consumers have, at some point, purchased merchandise that was marketed

6    as "on sale" because the proffered discount seemed too good to pass up."[1]  This class action

7    targets Indochino Apparel, Inc. and Indochino Apparel (US), Inc. (collectively, "Defendants"),

8    for their business practice of advertising perpetual sales with fictitious reference prices and

9    corresponding phantom discounts on men's clothing.  Specifically, Defendants engage in a

10   systematic and pervasive false reference pricing scheme by deceptively advertising through their

11   website, in stores, via e-mails and on social media that their men's clothing is "on sale" and was

12   previously sold at a substantially higher price when, in fact, the clothing has always been sold at

13   or near the falsely claimed "sale" price.  As used herein the term "Clothing" means Defendants'

14   men's made-to-measure clothing such as suits, tuxedos, blazers, vests and pants that are regularly

15   and repeatedly advertised at substantial discounts to a specified reference price but rarely, if ever,

16   sold at the represented reference price.

17   2.    The practice of false reference pricing occurs when a company fabricates a fake

18   regular, original or former reference price, and then offers an item for "sale" at a price that is

19   deeply discounted to the fabricated reference price.  In these situations, the deeply discounted

20   price is not in fact a discount because it is the price at which the item is customarily sold.  As

21   used herein the term "Reference Price" refers to the fabricated regular, original or former price at

22   which the Clothing was purportedly sold.  The deceptive pricing scheme conducted by

23   Defendants misleads reasonable consumers, including Plaintiff, to believe that the value of the

24   Clothing is substantially higher than its fair market value, inducing consumers to purchase the

25   Clothing based on the false premise that they are receiving "a great deal."  Defendants implement

26   the deceptive pricing scheme using a number of deceptive techniques, including depicting the

27

28   [1] *Hinojos v. Kohls Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

Reference Price as a strikethrough, *i.e.*, "$799," followed by the discounted price at which the item is being offered for "sale," *i.e.*, "$349."  Above the two prices Defendants often picture a circle with the discounted percentage, *i.e.*, "56% off" or simply the term "sale," further indicating that the Reference Price with the strikethrough is a regular, original or former price and that the "sale" price is heavily discounted from that Reference Price.  Under California law, the fair market value for private label products is the price at which the company regularly sells the products.  Because Defendants only sell made-to-measure private label Clothing, the fair market value of such Clothing is the value at which it is regularly sold and the net effect of Defendants' scheme is that Defendants' customers receive Clothing of substantially less quality and value than those that are advertised.

3.   Plaintiff purchased the Clothing in reliance on Defendants' false representations that the Clothing was "on sale" and of substantially higher quality and value than the actual quality and value of the Clothing.  Defendants' make these false representations on the marketing materials on their website, in store, via emails and on social media.  If Plaintiff had known that the Clothing did not have a fair market value equal to the Reference Price, Plaintiff would not have purchased the Clothing.  At a minimum, Plaintiff would not have paid as much as he did if he had known the "sale" price was the fair market value of the Clothing.

4.   As a result of this illicit pricing scheme, Defendants violated and continue to violate California consumer protection laws.  Defendants not only breached their written contract with purchasers of the Clothing; but also breached their express warranty under the California Commercial Code § 2313; violated the California Consumers Legal Remedies Act ("CLRA"); violated the California False Advertising Law ("FAL"); and violated the California Unfair Competition Law ("UCL") based on fraudulent, unlawful and unfair acts and practices.

5.   Plaintiff and the Class seek declaratory and injunctive relief enjoining Defendants from continuing the unlawful practices set forth herein, directing Defendants to identify all victims of their misconduct, ordering Defendants to engage in a corrective advertising campaign, and ordering Defendants to provide an accounting of their profits and unjust enrichment.  In addition, Plaintiff seeks damages, restitution and disgorgement of all profits and unjust

enrichment that Defendants obtained from Class members as a result of their unlawful, unfair and deceptive business practices.  Lastly, Plaintiff seeks reasonable attorneys' fees and costs, and such other and further relief as the Court may deem necessary or appropriate.

## PARTIES

6.     Plaintiff Jeffrey Freeman is a resident of San Francisco, California.  On Friday, August 4, 2017, Mr. Freeman placed an order for Defendants' Premium Navy Suit for $349 that was purported to be discounted from the Reference Price of $799.  The order number is #12854019 and was shipped to Mr. Freeman on August 15, 2017.  The invoice for his order is attached as Exhibit 1.  Defendants sell a number of premium suits, which are consistently offered at a "sale" price, usually in the range of $299-$399, including as recently as July 31, 2019.  On or about August 4, 2017, Mr. Freeman visited Defendants' website where he observed that a sale was occurring and that many suits were being sold at a steep discount from the Reference Prices listed on the website.  Seeking to take advantage of the sale, Mr. Freeman traveled to Defendants' showroom in San Francisco, located at 61 Post St., San Francisco, California 94104, to get measured for a made-to-measure suit.  After Defendants' employees measured Mr. Freeman at the showroom, they showed Mr. Freeman a computerized tablet that displayed Defendants' suits online so that Mr. Freeman could choose a suit to purchase.  On the tablet, Mr. Freeman observed that most of the premium suits had a Reference Price of $799.  Next to the Reference Price, Mr. Freeman observed that the premium suits had a "sale" price.  After perusing the premium suits on the tablet and observing the Reference Price and "sale" price, Mr. Freeman ordered the Premium Navy Suit from the tablet for the "sale" price of $349, which had a Reference Price of $799.

7.     Mr. Freeman ordered the suit believing that he was receiving a significant discount on a high quality item because the Reference Price indicated that he was purchasing a suit that had a value of $799, for a sale price of $349.  Mr. Freeman specifically purchased Defendants' Premium Navy Suit for $349 in reliance on Defendants' representations that the suit was being sold at a discount of $450.  However, the suit is rarely, if ever, sold for $799.  The suit was shipped to Mr. Freeman approximately four weeks after he ordered it.  Because Mr. Freeman ordered his suit using the tablet at Defendants' showroom, Mr. Freeman did not have an

1  opportunity to actually inspect the quality of the suit prior to purchasing it. Had Mr. Freeman

2  known that the suit was not worth $799, and had rarely, if ever, been sold at that price, he would

3  not have purchased the suit or would not have paid as much as he did for it.

4        8.      Defendant Indochino Apparel, Inc. is a Canadian corporation with its principal

5  places of business in Vancouver, BC, Canada. Defendant Indochino Apparel, Inc. advertises,

6  markets and sells the Clothing.

7        9.      Defendant Indochino Apparel (US), Inc. is a Delaware corporation with its

8  principal places of business in Vancouver, BC, Canada. Defendant Indochino Apparel (US), Inc.

9  advertises, markets and sells the Clothing.

10       10.     DOES 1 through 100 are persons or entities whose true names and capacities are

11  presently unknown to Plaintiff and members of the Class, and who therefore are sued by such

12  fictitious names. Plaintiff and members of the Class are informed and believe, and on that basis

13  allege, that each of the fictitiously named defendants perpetrated some or all of the wrongful acts

14  alleged herein and are responsible in some manner for the matters alleged herein. Plaintiff will

15  amend this Complaint to state the true names and capacities of such fictitiously named defendants

16  when ascertained.

17       11.     Defendants Indochino Apparel, Inc., Indochino Apparel (US), Inc., and DOES 1-

18  100 are collectively referred to herein as "Defendants."

19                                **JURISDICTION AND VENUE**

20       12.     This Court has jurisdiction over this action under the Class Action Fairness Act,

21  28 U.S.C. § 1332(d). The aggregated claims of the individual Class members exceed the sum or

22  value of $5,000,000, exclusive of interests and costs, and at least some members of the proposed

23  Class have a different citizenship from Defendants because each Defendant is not a citizen of

24  California.

25       13.     This Court has personal jurisdiction over Defendants because each is a

26  corporation or other entity that has sufficient minimum contacts in California, or otherwise

27  intentionally avails itself of the California market either through the distribution, sale or

28  marketing of the Clothing in the State of California or by having a facility or employees located

1   in California so as to render the exercise of jurisdiction over it by the California courts consistent

2   with traditional notions of fair play and substantial justice.

3       14.     Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the

4   events or omissions giving rise to the claim occurred in this District pursuant to 28 U.S.C. §

5   1391(b)(2).

6       15.     **Intradistrict Assignment (L.R. 3-2(c) and (d) and 3.5(b))**:  This action arises in

7   San Francisco County, in that a substantial part of the events which give rise to the claims

8   asserted herein occurred in San Francisco County.  Pursuant to L.R. 3-2(c), all civil actions which

9   arise in San Francisco County shall be assigned to the San Francisco Division or the Oakland

10  Division.

11                              **BACKGROUND FACTS**

12      16.     Defendants claim they are the largest made-to-measure apparel company in the

13  world.  Taking advantage of consumer perception that custom made-to-measure clothing is of the

14  highest quality, Defendants' advertise their Clothing to consumers who desire the "finest

15  materials," "lasting quality," and a "custom fit."  There are two predominant methods to purchase

16  Defendants' Clothing.  The first method is for customers to complete the entire purchase online at

17  Defendants' website.  Using this method, customers go through a three-step process that is

18  outlined on the website.  First, Defendants' customers are directed to choose from a full selection

19  of Clothing and other accessories on the website.  Second, Defendants' customers are offered the

20  option to further customize Clothing with monograms and other options.  Lastly, Defendants'

21  customers are provided with a step-by-step video on Defendants' website to measure themselves.

22  Customers are then requested to submit their measurements online and purchase the Clothing,

23  which Defendants' will custom make to each customer's individual measurements.  Each

24  customer is required to create an online profile using their email address, where their

25  measurements and order history are saved online for future reference.  Following this process,

26  many of Defendants' customers can complete their entire purchase online.

27      17.     The second method to purchase Defendants' Clothing is by visiting one of

28  Defendants' showrooms to get measured by one of Defendants' employees.   While Defendants

accept walk-ins at their showrooms, Defendants recommend booking an appointment online. After Defendants' employees measure a customer at the showroom, they provide the customer with a computerized tablet linked to an online portal to Defendants' Clothing.  Similar to the first method for purchasing Defendants' Clothing, each customer creates an online profile using their email address, where the measurements are then uploaded to Defendants' servers.  The customer then has the option to scroll through Defendants' online portal to pick the Clothing of their choice.  Thus, regardless of whether a customer completes the entire purchase online or visits a showroom and selects Clothing using the tablet, the customer is always directed to Defendants' website or online portal through the tablet to purchase the Clothing.  By funneling the entire process through Defendants' website or online portal, Defendants' customers are nearly always exposed to language indicating that there is a "sale" occurring, as well as the false Reference Price, "sale" price and often a percentage off for each article of Clothing.

18.     Because each customer is required to create an online profile using their email address, Defendants maintain an online account for each customer that saves their measurements so that they can purchase additional articles of Clothing online through their account without needing to get measured again or send in another set of measurements.   The online profile also saves each customer's order history and provides Defendants with an email address to continue to market the false reference pricing scheme to each customer.  Defendants' perpetuate their false reference pricing scheme by sending nearly daily emails regarding "sales" to each customer.  By maintaining an online profile of each customer, Defendants have access to every customers' purchase history, including the amounts each customer purchased their Clothing for as well as the false discounts attributed to those purchases.

19.     After Defendants' customers create their online profile and order Clothing, Defendants ship the Clothing to their customers.  Customers never see the finished Clothing until after the purchase is complete and the Clothing is sent to them.  Thus, Plaintiff and the Class members have no way to independently determine the value of the Clothing prior to purchase because they have never seen the Clothing in person and must rely on Defendants' false assertions as to the value of the Clothing.

20.    This action seeks to remedy Defendants' unlawful, unfair and deceptive business practices with respect to the advertising and sales of the Clothing in California. Defendants engage in a scheme to defraud consumers by perpetually discounting the advertised price of the Clothing. Specifically, Defendants deceptively advertise through their website, in stores, via e-mails and on social media that the Clothing is "on sale" and was previously sold at a substantially higher Reference Price, when, in fact, the Clothing has nearly always been sold at or near the falsely claimed "sale" price. In other words, the "sale" price is simply Defendants' regular price.

21.    Defendants have thus engaged in a continuous and uniform multimedia advertising campaign that centered on percentage and dollar-off discounts to consumers. They also advertise these false discounted prices as only available for a limited time in order to induce consumers with a false sense of urgency so that they purchase the "sale" price of the Clothing before it returns to the Reference Price, which it never does. For example, since at least April 26, 2019, Defendants have advertised the Chatham Gray Suit with a Reference Price of $799, but have never sold that suit at that price. Below is a screen shot of the Chatham Gray Suit from Defendants' website on April 26, 2019:



Document Prepared
on Recycled Paper

1

2    22.    Here it is on May 1, 2019:



23.    Here it is on May 30, 2019:



24.     Here it is on June 19, 2019:



25.     And here it is on July 31, 2019:

26.     While during this three month period the "sale" price of the Chatham Gray Suit varied between $299 and $349, the Chatham Gray Suit was never offered for sale at its Reference Price of $799.  In fact, it was never offered for sale at more than half of the $799 Reference Price.

DOCUMENT PREPARED
ON RECYCLED PAPER

CLASS ACTION COMPLAINT

Defendants' false sale pricing representations regarding the Chatham Gray Suit are repeated with the other Clothing.

27.    Defendants' false reference pricing scheme is primarily implemented on their website and via email as well as in social media.  Once a consumer arrives at Defendants' website, the homepage of the website bombards consumers with a variety of limited time "sales." The top banner of the homepage usually displays a seasonal or daily "sale."  For example, on April 26, 2019, the "sale" in the top banner was called "April Clearance" and offered over 100 suits for $299 with the parenthetical "(You Save $500)."



28.    On May 1, 2019, only five days later, the "sale" in the top banner was called "May Days" and offered Defendants' favorite spring suits at $329 with the parenthetical "(Savings of over 60%)."



DOCUMENT PREPARED
ON RECYCLED PAPER

29.    On May 3, 2019, only two days later, the "sale" in the top banner was called "Ultimate Spring Sale" and offered up to 60% off site wide.



30.    On May 14, 2019, the "sale" in the top banner was called "48 hour special" and offered savings of up to $470 on suits.



31.    On May 30, 2019, the "sale" in the top banner was called "May Clearance" and offered over 100 suits at their lowest price yet.



32.     These are examples of Defendants' consistent and perpetual sale scheme.  Based on the continuous nature of this marketing campaign, the Clothing sold by Defendants is rarely, if ever, sold to consumers at the Reference Price.

33.     Even if a consumer does not click the top banner of the homepage displaying the daily or seasonal "sale," clicking on any specific tab for the Clothing leads a consumer to other pages conveying Defendants' false reference pricing scheme.  For example, each webpage for Defendants' custom made-to-measure Clothing displays the articles of that type of Clothing with a false Reference Price and a corresponding "sale" price immediately next to the Reference Price. The Reference Price is printed in "strikethrough," communicating to the consumer that the Reference Price is a regular, original or former price of the item that is now being offered at a substantial discount.  Above the two prices is frequently a circle that displays the discounted percentage, *i.e.*, "50% off," further substantiating that the Reference Price is a regular, original or former price and that the "sale" price is heavily discounted from that Reference Price.  The advertising for this Clothing routinely includes the false Reference Price (which is crossed out) and the "sale" price, and frequently the percentage off.

34.     For example, below is a screen shot of Defendants' website from May 3, 2019 displaying the first row of suits when a consumer clicks on the "suits" tab:

## SUITS

ALL     SPRING 2019     PREMIUM     LUXURY     TUXEDOS





Hemsworth Navy Suit
$799 $389   PREMIUM

Carlisle Charcoal Suit
$799 $369

Chatham Dark Navy Suit
$799 $369

Hemsworth Charcoal Suit
$799 $389   PREMIUM

DOCUMENT PREPARED
ON RECYCLED PAPER

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

35.    The webpage automatically loads as the user scrolls down the page to add more falsely advertised "sale" suits such that up to 43 premium suits are displayed on the page.  Below is screenshot from Defendants' website displaying an entire page of premium suits in miniaturized form:



Document Prepared
on Recycled Paper

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22    36.    Each of the above referenced "sale" suits was advertised with a Reference Price of

23  $699 to $799 and was on "sale" for less than $399.  During the prior three months, none of these

24  suits were offered for sale at the Reference Price.  In fact, Plaintiff can find no evidence that any

25  of these suits were ever sold at the Reference Price.

26    37.    The Clothing is rarely, if ever, offered for sale at the Reference Price.  The

27  Reference Price is merely a false regular, original or former price, which Defendants utilize to

28  deceptively manufacture a deeply discounted "sale" price on the Clothing.  This practice is not

accidental.  Rather, this practice is a fraudulent scheme intended to deceive consumers into: (1) making purchases they otherwise would not have made; and (2) purchasing Clothing they believe was of a higher worth or value than the Clothing sold to them by Defendants.

38.    Defendants have showrooms throughout California, including San Francisco, San Jose, Sacramento, Santa Monica, West Hollywood, Glendale, Newport Beach and San Diego. The showrooms are not conventional retail outlets; rather, consumers who do not wish to measure themselves and submit measurements online have the option to visit a showroom to receive a fitting from one of Defendants' employees.  While the showrooms accept walk-ins, Defendants' recommend that consumers book an appoint online for a fitting at a showroom to receive measurements for Defendants' custom made-to-measure Clothing.

39.    Because Defendants' customers must use a computerized tablet linked to an online portal operated by Defendants to purchase Clothing at the showroom, Defendants' false pricing scheme is funneled through their portal, which contains the same false pricing scheme as their website.  In addition, since each customer creates an online profile, Defendants' maintain a database of all customers who have purchased the Clothing, which includes each customer's name, address, email address and phone number, as well as the price each customer paid, the false discount given, the purchase history and the customers' measurements.  Thus, Defendants' have in their custody, control or possession all the information to identify the Class members, as well as the information necessary to determine specific remedies available to Plaintiff and each Class member.

40.    For more than three months Defendants' website was closely monitored.  During this time, Defendants have consistently sold premium suits with a Reference Price of between $699 and $799 without ever selling such Clothing at the Reference Price.  For example, Defendants' have listed the Chatham Gray Suit, Chilton Micro Check Charcoal Suit, Granite Fineline Stripe Suit and Newton Indigo Suit on their website with a Reference Price of $799, always displayed with a strikethrough.  The highest price Defendants charged for any of these suits was $349, and the lowest price charged was $299.  Thus, for at least three months, Defendants have never sold these suits for the Reference Price.  In fact, for at least the past three

DOCUMENT PREPARED
ON RECYCLED PAPER

months, Defendants have never sold these suits for more than $400 (50% off from the Reference Price). Because the Clothing is all made-to-measure private label Clothing, the fair market value of such Clothing is the value at which it is sold, which, in the example above for the Chatham Gray Suit, was never more than $349.

41.    Once a customer creates an online profile on Defendants' website, Defendants send emails and post ads further perpetuating their limited time "sales" and false pricing scheme. The pervasive nature of Defendants' perpetual "sale" pricing scheme can also be seen by examining their email marketing campaign. Examples of the subject lines of some of these nearly daily emails include:

- You're the first to know! Our May Clearance Sale is here (May 29, 2019);
- 6 hours left | EXTENDED Happy Hour Sale (June 3, 2019);
- 48 hour special starts today! Premium Suits from $369 (June 8, 2019);
- Every.Suit.On.Sale. Up to 60% off every suit (June 12, 2019);
- Claim THIS now. Premium suits from $369 (June 21, 2019);
- Only hours left on this EXTENDED semi-annual sale (June 24, 2019);
- (3)(2)(1) 24 more hours to have custom suits from $349! Skip the racks and go custom (June 26, 2019);
- June Blowout ENDS TONIGHT! Best Selling Suits from $329 (June 30, 2019);
- Not even kidding: This 24 hour special sale is definitely a must-see (July 3, 2019);
- Get in on this before it's over! Limited Run Suits for $299 (July 7, 2019); and
- This ends tonight! Premium Suits from $379. Save up to $420 (July 10, 2019);

42.    Attached as Exhibit 2 is a screenshot depicting over three months of nearly daily emails regarding sales.

43.    Defendants understand that consumers are susceptible to a good bargain, and therefore, Defendants have a substantial interest in creating a false sense of urgency and value to generate sales. A product's Reference Price is material to consumers because it serves as a

DOCUMENT PREPARED
ON RECYCLED PAPER

baseline upon which consumers perceive a product's quality and value. In this case, Defendants have marked the Clothing with a Reference Price which conveys to reasonable consumers, including Plaintiff, that the quality and value of the Clothing is far greater than the amount paid.

44. Defendants manufacture their own custom made-to-measure Clothing and are the exclusive source for them. Thus, under California law the fair market value of the Clothing is the price at which Defendants regularly sell the Clothing, which is nearly always the deeply discounted "sale" price and not the Reference Price. Because Defendants rarely, if ever, sell the Clothing at the Reference Price, there is no basis for the Reference Price in the market for Defendants' Clothing. Accordingly, the Reference Price and the supposed "sale" based on the Reference Price are deceptive and misleading to reasonable consumers. Moreover, because Defendants' Clothing is marketed as custom and made-to-measure along with the advertised Reference Price, reasonable consumers believe they are receiving "a great deal" on high quality and value men's clothing, when they are actually purchasing lower quality Clothing for its fair market value. Defendants' advertised offers thus misrepresent the existence of a discount, the particular worth of Defendants' Clothing and the value of the Clothing.

45. The Federal Trade Commission Act ("FTCA") prohibits offering these kinds of fictitious or false bargains. *See* 15 U.S.C. § 45(a)(1) (prohibiting unfair or deceptive acts or practices in or affecting commerce); *see also* 15 U.S.C. § 52(a) (prohibiting the dissemination of any false advertisements). Under regulations promulgated by the Federal Trade Commission ("FTC"), false reference pricing schemes, like those implemented by Defendants, are deceptive practices that violate the FTCA:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the usual value

DOCUMENT PREPARED
ON RECYCLED PAPER

he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made.  The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith - and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.  And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $___"), unless substantial sales at that price were actually made.

(c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each.  His usual markup is 50 percent over cost; that is, his regular retail price is $7.50.  In order subsequently to offer an unusual "bargain," Doe begins offering Brand X at $10 per pen.  He realizes that he will be able to sell no, or very few, pens at this inflated price.  But he doesn't care, for he maintains that price for only a few days.  Then he "cuts" the price to its usual level - $7.50 - and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!"  This is obviously a false claim.  The advertised "bargain" is not genuine.

16 C.F.R. § 233.1(a)-(c).  In addition, the FTC requires advertisers to "make certain that the bargain offer is genuine and truthful."  *See* 16 C.F.R. § 233.5.

46.    As stated above in detail, Defendants' pricing scheme fails to satisfy the principles set forth in the FTCA.  Defendants' false "sale" pricing is predicated on "an artificial, inflated price" that they "established for the purpose of enabling the subsequent offer of a large reduction" in price, 16 C.F.R. § 233.1(a), so their "bargain offer" is not "genuine and truthful," 16 C.F.R. § 233.5.

47.    Similar to the FTC, the California legislature has specifically forbidden false reference pricing schemes.  Pursuant to the FAL, companies may not advertise a "former price of any advertised thing" unless it was "the prevailing market price . . . within three months next immediately preceding the publication of the advertisement."  *See* Cal. Bus. & Prof. Code § 17501.  Based on the continuous nature of Defendants' marketing campaign, the Clothing is rarely, if ever, offered for sale at the Reference Price listed on the website and the Reference Price is never the prevailing market price.

DOCUMENT PREPARED ON RECYCLED PAPER

48.    Empirical Marketing studies demonstrate that retailers have an incentive to engage in this false and fraudulent behavior:

> [b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product . . . Thus, if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a  false sense of value.

Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Marketing 52, 55-56 (1992).

49.    Indeed, Defendants' false and misleading advertising led Plaintiff to believe he was purchasing high quality custom made-to-measure men's clothing at a steep discount, when he was actually paying the standard retail price for lower quality Clothing set by Defendants.  The existence of the discount and the information it conveyed regarding the Clothing were material to Plaintiff and formed part of the basis of the bargain he struck with Defendants.  But for Defendants' wrongful conduct, Plaintiff would not have purchased the Clothing or would have paid less.  Had Plaintiff seen the Clothing advertised at simply the sale price of $349 without any Reference Price, he would have thought the Clothing was of inferior quality and would not have purchased it.  However, after seeing the Reference Price with the purported sale, he was persuaded that the Clothing was of superior quality, which led him to purchase the suit.

50.    Plaintiff continues to desire to purchase Clothing from Defendants.  Plaintiff would purchase Clothing from Defendants in the future if he was certain that the value of the Clothing was the value referenced by Defendants as the Reference Price and the Clothing was sold at the sale price.  In addition, Defendants sell suits of higher value and quality than the false advertised "sale" suits.  These suits generally cost more than the sale price but less than the Reference Price of the false advertised suits.  If Defendants were to stop their false pricing scheme and provide honest and truthful information about the value and quality of all of their suits, Plaintiff would be interested in purchasing one of these higher quality suits at its fair market value.

51.    Plaintiff is susceptible to this recurring scheme because he cannot be certain that Defendants have corrected their deceptive pricing scheme.  Plaintiff does not have the resources

DOCUMENT PREPARED
ON RECYCLED PAPER

to determine whether Defendants are complying with California and Federal law with respect to their pricing and sale practices.   Plaintiff can no longer rely on Defendants' representations on their website, in store ads or other advertising and marketing materials as to the true market value of the Clothing.  Plaintiff would not have purchased the Clothing if Defendants had disclosed that the value of the Clothing was that of the "sale" price and not the Reference Price.

52.      On June 5, 2019, and again on July 9, 2019, Plaintiff sent a pre-suit demand letter to Defendants notifying them that the Clothing is deceptively advertised as being on sale and previously sold at the substantially higher Reference Price when, in fact, the Clothing was rarely if ever sold at the Reference Price.  On August 2, 2019, in response to Plaintiff's pre-suit demand letter, counsel for Defendants advised Plaintiff that certain changes were made to its website pricing scheme.  An initial review indicates that Defendants changed some of the website pricing to substantially reduce the Reference Price for certain suits.  However, Plaintiff is unable to determine whether Defendants have universally addressed all of the website pricing issues and there is no evidence that Defendants have changed any other aspect of their false pricing scheme such as the email or social media campaigns, or will continue to implement corrective changes in the future.  Nor have Defendants addressed any other issues raised in Plaintiff's pre-suit demand such as notifying members of the Class or providing monetary compensation to members of the Class.

## CLASS ACTION ALLEGATIONS

53.      Plaintiff brings this suit individually and as a class action pursuant to Federal Rule of Civil Procedure Rule 23, on behalf of himself and the following Class of similarly situated individuals:

> All persons residing in the State of California who, during the applicable statute of limitations period, purchased men's made-to-measure clothing such as suits, tuxedos, blazers, vests and pants that were sold at a specified discount to a false reference price from Defendants (the "Class").  Specifically excluded from the Class are Defendants; the officers, directors or employees of Defendants; any

DOCUMENT PREPARED
ON RECYCLED PAPER

entity in which Defendants have a controlling interest; and any

affiliate, legal representative, heir or assign of Defendants.  Also

excluded is any judicial officer presiding over this action and the

members of his or her immediate family and judicial staff, and any

juror assigned to this action.

54.     **Numerosity:** Plaintiff is unable to state the precise number of potential members

of the proposed Class because that information is in the possession of Defendants.  However, the

number of Class members is so numerous that joinder would be impracticable for purposes of

Rule 23(a)(1).  The exact size of the proposed Class and the identity of its members will be

readily ascertainable from the business records of Defendants as well as Class members' own

records and evidence.  In fact, because Defendants' maintain an online profile for each customer

that includes the customer's name, address, email address and phone number, as well as the price

each customer paid, the false discount given and the purchase history, determining the number

and identity of each Class member will be a relatively straight forward task.  Considering

Defendants' significant presence in California, the proposed Class will likely have well over 100

members.  Thus, joinder of such persons in a single action or bringing all members of the Class

before the Court is impracticable.  The disposition of the claims of the members of the Class in

this class action will substantially benefit both the parties and the Court.

55.     **Commonality:** There is a community of interest among the members of the

proposed Class in that there are questions of law and fact common to the proposed Class for

purposes of Rule 23(a)(2), including whether Defendants' advertisements include uniform

misrepresentations that misled Plaintiff and the other members of the Class to believe the

Clothing was being sold at a substantially discounted price when it was actually being sold at its

regular market price.  Proof of a common set of facts will establish the liability of Defendants and

the right of each member of the Class to relief.

56.     **Typicality:** Plaintiff asserts claims that are typical of the claims of the entire Class

for purposes of Rule 23(a)(3).  Plaintiff and all members of the Class have been subjected to the

same wrongful conduct because Defendants' false pricing scheme is uniform and pervasive and

DOCUMENT PREPARED
ON RECYCLED PAPER

they have all purchased Clothing that is sold at a false "sale" price, when they have rarely, if ever, been sold at the advertised Reference Price.

57.    **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class for purposes of Rule 23(a)(4).  Plaintiff has no interests antagonistic to those of other members of the Class.  Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in complex litigation of this nature to represent him.  Plaintiff anticipates no difficulty in the management of this litigation as a class action.

58.    Class certification is appropriate under Rule 23(b)(2) because Defendants have acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief, is appropriate respecting the Class as a whole.  Defendants utilize advertising campaigns that include uniform misrepresentations that misled Plaintiff and the other members of the Class.

59.    Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact substantially predominate over any questions that may affect only individual members of the Class.  These common legal and factual questions, which do not vary among Class members and which may be determined without reference to the individual circumstances of any Class member include, but are not limited to the following:

    a.    whether Defendants advertise and market the Clothing by representing that it is on "sale" and was previously sold at a substantially higher Reference Price;

    b.    whether the Clothing has ever been sold at the Reference Price;

    c.    whether the market value of Defendants' Clothing is the Reference Price;

    d.    whether the market value of Defendants' Clothing is the actual "sale" price;

    e.    whether Defendants' false reference pricing scheme for the Clothing is likely to deceive a reasonable consumer;

    f.    whether a reasonable consumer would believe the Clothing has a market value equal to the Reference Price;

    g.    whether Defendants' false reference pricing scheme for the Clothing would be

DOCUMENT PREPARED
ON RECYCLED PAPER

material to a reasonable consumer of the Clothing;

h.  whether Defendants' representations regarding the "sale" price of the Clothing are in compliance with the FTCA;

i.  whether Defendants' conduct constitutes an unlawful, unfair or fraudulent business practice in violation of the UCL;

j.  whether Defendants' conduct constitutes a violation of the FAL;

k.  whether Defendants' conduct constitutes a violation of the CLRA;

l.  whether Defendants' reference pricing scheme for the Clothing constitutes express warranties with regard to the Clothing;

m.  and if so, whether Defendants breached the express warranties they made with regard to the Clothing;

n.  whether Defendants' reference pricing scheme for the Clothing constitutes representations that the Clothing has characteristics, benefits or qualities which it does not have;

o.  whether Defendants advertised their Clothing without an intent to sell them as advertised;

p.  whether Defendants have been unjustly enriched from the sale of the Clothing;

q.  whether punitive damages are warranted for Defendants' conduct and, if so, an appropriate amount of such damages; and

r.  whether Plaintiff and the Class members are entitled to injunctive, equitable and monetary relief.

60.    Defendants utilize marketing and advertisements that include uniform misrepresentations that misled Plaintiff and the other members of the Class.  Defendants' false reference pricing scheme for the Clothing mislead consumers to believe that the fair market value of the Clothing is substantially higher than its actual fair market value.  However, because the Clothing is rarely, if ever, sold at the Reference Price, the "sale" price is the actual fair market value of the Clothing.  Thus, there is a well-defined community of interest in the questions of law and fact involved in this action and affecting the parties.

61.     Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy.  Class members have suffered and will suffer irreparable harm and damages as a result of Defendants' wrongful conduct.  Because of the nature of the individual Class members' claims, few, if any, could or would otherwise afford to seek legal redress against Defendants for the wrongs complained of herein, and a representative class action is therefore appropriate, the superior method of proceeding, and essential to the interests of justice insofar as the resolution of Class members' claims are concerned.  Absent a representative class action, members of the Class would continue to suffer losses for which they would have no remedy, and Defendants would unjustly retain the proceeds of their ill-gotten gains.  Even if separate actions could be brought by individual members of the Class, the resulting multiplicity of lawsuits would cause undue hardship, burden and expense for the Court and the litigants, as well as create a risk of inconsistent rulings which might be dispositive of the interests of the other members of the Class who are not parties to the adjudications or may substantially impede their ability to protect their interests.

## FIRST CAUSE OF ACTION

**(California Consumers Legal Remedies Act – Injunctive Relief and Damages)**

62.     Plaintiff incorporates by reference the allegations set forth above.

63.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "CLRA").  Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d).  Defendants' sale of the Clothing to Plaintiff and the Class members were "transactions" within the meaning of California Civil Code § 1761(e).  The Clothing purchased by Plaintiff and the Class members are "goods" within the meaning of California Civil Code § 1761(a).

64.     The acts and practices of Defendants as described above were intended to deceive Plaintiff and the Class members as described herein and have resulted and will result in damages to Plaintiff and the Class members.  This conduct includes, but is not limited to, misrepresenting

the value of the Clothing and discounts at which the Clothing is sold.  These actions violated and continue to violate the CLRA in at least the following respects:

        a.        In violation of Section 1770(a)(5) of the CLRA, Defendants' acts and practices constitute representations that Defendants' Clothing has characteristics, uses or benefits that it does not;

        b.        In violation of Section 1770(a)(7) of the CLRA, Defendants' acts and practices constitute representations that the Clothing is of a particular standard, quality or grade, even though it is of another;

        c.        In violation of Section 1770(a)(9) of the CLRA, Defendants' acts and practices constitute the advertisement of the Clothing without the intent to sell is as advertised; and

        d.        In violation of Section 1770(a)(13) of the CLRA, Defendants' acts and practices constitute the making of false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions.

65.     By reason of the foregoing, Plaintiff and the Class members have suffered damages.

66.     By committing the acts alleged above, Defendants violated and continue to violate the CLRA.

67.     Pursuant to §1782(a) of the CLRA, on July 9, 2019, Plaintiff's counsel notified Defendants in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to act.  If Defendants fail to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by § 1782, Plaintiff will move to amend his Complaint to pursue claims for actual, punitive, and statutory damages, as appropriate against Defendants.  As to this cause of action, at this time, Plaintiff seeks injunctive relief.

68.     Pursuant to California Civil Code § 1780(a)(2), Plaintiff and the Class members are entitled to an order enjoining the above-described wrongful acts and practices of Defendants, and ordering the payment of costs and attorneys' fees and any other relief deemed appropriate and proper by the Court under California Civil Code § 1780.

69.     Concurrently with the filing of the complaint, Plaintiff filed an affidavit pursuant to Civil Code § 1780(d) regarding the propriety of venue.  Venue is proper pursuant to Civil Code § 1780(d) as a substantial portion of the transactions at issue occurred in this District.

## SECOND CAUSE OF ACTION

**(California's False Advertising Law**
**California Business & Professions Code §§ 17500 *et seq.*)**

70.     Plaintiff incorporates by reference the allegations set forth above.

71.     California's False Advertising Law ("FAL") provides:

It is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known or which by the exercise of reasonable care should be known, to be true or misleading . . ."  Cal. Bus & Prof. Code § 17500.

72.     The "intent" required by § 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

73.     Likewise, Cal. Bus. & Prof. Code § 17501 provides:

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement."

74.     For private label products that are sold exclusively by a single company, the prevailing market price is the price at which that company regularly sells the products.  *See Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 527-528 (C.D. Cal. 2015).

75.     Defendants' practice of perpetually advertising discounted prices from false Reference Prices, which have not been the prevailing market prices of the Clothing at least within

the past three months and are materially higher than the true prevailing market prices, is a false, misleading and unlawful business practice.  This deceptive marketing practice gave Plaintiff and the Class members the false impression that the Clothing they purchased was regularly sold for a substantially higher price than the false "sale" price that they paid, leading to the reasonable but false impression that the Clothing had a value equal to the false Reference Price.  In fact, because the custom made-to-measure Clothing is sold exclusively by Defendants, the prevailing market value is the false "sale" price that Plaintiff and the Class members actually paid.

76.    As a direct and proximate result of Defendants' misleading and false advertisements, Plaintiff and the Class members have suffered injury in fact and have lost money.  As such, Plaintiff requests that this Court order Defendants to restore this money to him and all Class members, to disgorge Defendants' wrongfully obtained profits and to enjoin Defendants from continuing these unfair and deceptive practices in violation of the FAL in the future.

**THIRD CAUSE OF ACTION**

**(California's Unfair Competition Law — Based on Fraudulent Acts and Practices, California Business & Professions Code § 17200 *et seq.*)**

77.    Plaintiff incorporates by reference the allegations set forth above.

78.    Under Business & Professions Code § 17200 *et seq.* (the "UCL"), any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

79.    Defendants have engaged and continue to engage in conduct that is likely to deceive members of the public.  This conduct includes, but is not limited to, misrepresenting that the Clothing is substantially discounted and has a particular worth or value, when such Clothing is not substantially discounted and does not have such particular worth or value.

80.    Plaintiff and the Class members purchased the Clothing in reliance on Defendants' representations that the Clothing is substantially discounted and has a particular worth or value.  Defendants' claims that the Clothing is substantially discounted and has a particular worth or value are material, untrue and misleading.  Defendants' false reference pricing scheme is prominent on their marketing and advertising for the Clothing, even though Defendants are aware that the claims are false and misleading.  Defendants' claims are thus likely to deceive both

-27-

DOCUMENT PREPARED ON RECYCLED PAPER

Plaintiff and reasonable consumers. Plaintiff and the Class members would not have purchased the Clothing, or would not have paid as much for the Clothing, but for Defendants' false representations that the Clothing is substantially discounted and has a particular worth or value. Plaintiff and the Class members have thus suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations and material omissions.

81.     By committing the acts alleged above, Defendants have engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code § 17200.

82.     An action for injunctive relief and restitution is specifically authorized under Business & Professions Code § 17203.

## FOURTH CAUSE OF ACTION

**(California's Unfair Competition Law — Based on Unfair Acts and Practices, California Business & Professions Code §§ 17200 *et seq.*)**

83.     Plaintiff incorporates by reference the allegations set forth above.

84.     Under California Business & Professions Code § 17200 *et seq.* ("UCL"), any business act or practice that is unethical, oppressive, unscrupulous or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

85.     Unfair acts under the UCL have been interpreted using three different tests: (1) whether the public policy which is a predicate to a consumer unfair competition action under the unfair prong of the UCL is tethered to specific constitutional, statutory, or regulatory provisions; (2) whether the gravity of the harm to the consumer caused by the challenged business practice outweighs the utility of the defendant's conduct; and (3) whether the consumer injury is substantial, not outweighed by any countervailing benefits to consumers or competition, and is an injury that consumers themselves could not reasonably have avoided. Defendants' conduct is unfair under each of these tests.

86.     As detailed in the preceding paragraphs, Defendants have engaged and continue to engage in conduct that violates the legislatively declared policy of the CLRA against:

DOCUMENT PREPARED ON RECYCLED PAPER

1          a.     representing that the Clothing has characteristics, uses, benefits or qualities

2                   that it does not;

3          b.     representing that the Clothing is of a particular standard, quality or grade, if

4                   it is of another;

5          c.     advertisement of Clothing with intent not to sell it as advertised; and

6          d.     making of false or misleading statements of fact concerning reasons for,

7                   existence of, or amounts of, price reductions.

87.    Defendants have further engaged, and continue to engage, in conduct that violates the legislatively declared policy of the FAL against advertising a former price as the prevailing market price without selling Clothing at that price within three months preceding the date of the advertisement.

88.    Defendants have engaged, and continue to engage, in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. This conduct includes misrepresenting that the Clothing is substantially discounted and has a particular worth or value. The gravity of harm caused by Defendants' conduct as described herein far outweighs the utility, if any, of such conduct.

89.    Defendants have also engaged, and continue to engage, in conduct that is substantially injurious to consumers. This conduct, which includes misrepresenting that the Clothing is substantially discounted and has a particular worth or value, is substantially injurious to consumers. Such conduct has caused and continues to cause substantial injury to consumers because consumers would not have purchased the Clothing but for Defendants' representations that the Clothing is substantially discounted and has a particular worth or value. The price and value of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Misleading consumers causes injury to such consumers that is not outweighed by any countervailing benefits to consumers or competition. Indeed, no benefit to consumers or competition results from Defendants' conduct.

90.     Plaintiff and Class members purchased the Clothing after viewing Defendants' misrepresentations that the Clothing was substantially discounted and of a particular value or worth.  Since Plaintiff and Class members reasonably relied on Defendants' representations of the pricing and value of the Clothing and injury results from purchase of the Clothing, consumers could not have reasonably avoided such injury.  Although Defendants know that the Clothing is not substantially discounted and does not have the particular worth or value that Defendants advertise, Defendants failed to disclose that fact to Plaintiff and the Class members.  Plaintiff and Class members would not have purchased the Clothing, or would not have paid as much for Clothing, but for Defendants' unfair business practices.  Plaintiff and the Class members have thus suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations and material omissions.

91.     By committing the acts alleged above, Defendants have engaged in unfair business acts and practices which constitute unfair competition within the meaning of California Business & Professions Code § 17200.

92.     An action for injunctive relief and restitution is specifically authorized under California Business & Professions Code § 17203.

## FIFTH CAUSE OF ACTION

**(California's Unfair Competition Law ("UCL") — Based on Commission of Unlawful Acts, California Business & Professions Code §§ 17200, *et seq*.)**

93.     Plaintiff incorporates by reference the allegations set forth above.

94.     The violation of any law constitutes an unlawful business practice under Business & Professions Code § 17200.

95.     As detailed more fully in the preceding paragraphs, the acts and practices alleged herein were intended to or did result in the violations of the CLRA (specifically California Civil Code § 1770(a)(5), § 1770(a)(7), § 1770(a)(9) and § 1770(a)(13)), the FTCA, the FAL, California Commercial Code § 2313, and breaching their contracts with Plaintiff and Class members. Defendants have engaged in unlawful business acts and practices which constitute unfair competition within the meaning of Business & Professions Code § 17200.  Plaintiff and the Class members would not have purchased the Clothing, or would not have paid as much for the

-30-

DOCUMENT PREPARED ON RECYCLED PAPER

Clothing, but for Defendants' unlawful business practices. Plaintiff and the Class members have thus suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations and material omissions.

96.　　An action for injunctive relief and restitution is specifically authorized under Business & Professions Code § 17203.

## SIXTH CAUSE OF ACTION
### (Breach of Express Warranty)

97.　　Plaintiff incorporates by reference the allegations set forth above.

98.　　The Uniform Commercial Code § 2-313 provides that an affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the promise.

99.　　As detailed above, Defendants marketed and sold the Clothing with affirmations of fact that the Clothing was on sale and was previously sold at substantially higher prices. Defendants thus made promises and affirmations of fact that the Clothing was substantially discounted and had a particular worth or value that was equal to the false Reference Price.

100.　　The affirmations of fact made by Defendants were made to induce Plaintiff and Class members to purchase the Clothing from Defendants.

101.　　Defendants' representations regarding the "sale" and Reference Prices for the Clothing are made through their website, in stores, via e-mails, on social media and on order and order confirmation forms, and are thus part of the basis of the bargain between Defendants and purchasers of the Clothing. The "sale" price and the Reference Price is also documented on invoices and sales documents provided to Plaintiff and the Class members.

102.　　All conditions precedent to Defendants' liability under these express warranties have been fulfilled by Plaintiff and Class members in terms of paying for the goods at issue, or have been waived.

103.　　California has codified and adopted the provisions of the Uniform Commercial Code governing express warranties (Cal. Com. Code § 2313).

DOCUMENT PREPARED
ON RECYCLED PAPER

104.    At the time that Defendants sold the Clothing, Defendants knew that the Clothing was not being sold at a discount and did not have the particular worth or value indicated by the purported Reference Price.

105.    On June 5, 2019, and again on July 9, 2019, Plaintiff sent a pre-suit demand letter to Defendants notifying Defendants that the Clothing is deceptively advertised as being on sale and previously sold at substantially higher prices when, in fact, the Clothing has nearly always been sold at or near the false claimed "sale" prices.  Defendants therefore have actual and constructive knowledge that the Clothing was not being sold at a discount and did not have the particular worth or value indicated by the purported discount.

106.    Defendants breached the terms of the express warranty because the items purchased by Plaintiff and Class members did not conform to the description provided by Defendants — that they were being sold at a discounted price and had a particular worth or value equal to the Reference Price.

107.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and Class members have been injured and have suffered actual damages.

## SEVENTH CAUSE OF ACTION
### (Breach of Contract)

108.    Plaintiff incorporates by reference the allegations set forth above.

109.    Plaintiff and Class members entered into written contracts with Defendants.

110.    The contracts are drafted by Defendants, are uniform as to terms, and, as condition of purchase, Plaintiff and all members of the Class had to agree to the terms of the contracts.

111.    The contracts provided that Plaintiff and Class members would pay Defendants for the Clothing they purchased.

112.    The contracts further provided that Defendants would provide Plaintiff and Class members a product that had a specified value that is equal to the Reference Price.  The Clothing is all private label made-to-measure men's clothing that is only available for purchase from Defendants.  Thus, the value of the Clothing promised to be provided by Defendants was the Reference Price.  This specified discount was a definite and material term of each contract.

113. Plaintiff and Class members paid Defendants for the Clothing they purchased, and satisfied all other conditions of the contracts.

114. Defendants breached the contracts with Plaintiff and Class members by providing Clothing that had a lower value equal to the actual "sale" price and not of the materially higher Reference Price.

115. As a direct and proximate result of Defendants' breach, Plaintiff and Class members have been injured and have suffered actual damages in an amount to be established at trial.

116. On June 5, 2019, and again on July 9, 2019, Plaintiff notified Defendants in writing of his claims and that the Plaintiff is acting on the behalf of the Class.

## EIGHTH CAUSE OF ACTION

### (Unjust Enrichment – Quasi-Contract Claim Seeking Restitution)

117. Plaintiff incorporates by reference the allegations set forth above.

118. Plaintiff and the Class members conferred benefits on Defendants by purchasing the Clothing.

119. Defendants have knowledge of such benefits.

120. Defendants voluntarily accepted and retained the benefits conferred.

121. Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class members' purchases of the Clothing.

122. Retention of that money under these circumstances is unjust and inequitable because Defendants falsely and misleadingly represented that the Clothing was substantially discounted and had a particular worth or value, when the Clothing did not in fact have such particular worth or value.

123. These misrepresentations caused injuries to Plaintiff and the Class members because they would not have purchased the Clothing, or would not have paid as much for the Clothing, had they known that the Clothing did not have the advertised particular worth or value.

124.    Because Defendants' retention of the non-gratuitous benefits conferred to it by Plaintiff and the Class members is unjust and inequitable, Defendants ought to pay restitution to Plaintiff and the Class members for their unjust enrichment.

125.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and the Class members are entitled to restitution or disgorgement in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief against Defendants as follows:

A.    That the Court declare this a class action;

B.    That the Court preliminarily and permanently enjoin Defendants from conducting their business through the unlawful, unfair or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

C.    That the Court order Defendants to conduct a corrective advertising and information campaign advising consumers that the Clothing does not have the characteristics, uses, benefits and quality Defendants have claimed;

D.    That the Court order Defendants to cease and refrain from marketing and promotion of the Clothing that state or imply that the Clothing is substantially discounted and has a particular worth or value, when such Clothing does not have such particular worth or value;

E.    That the Court order Defendants to implement whatever measures are necessary to remedy the unlawful, unfair or fraudulent business acts or practices, untrue and misleading advertising and other violations of law described in this Complaint;

F.    That the Court order Defendants to notify each and every Class member of the pendency of the claims in this action in order to give such individuals an opportunity to obtain restitution and damages from Defendants;

G.    That the Court order Defendants to pay restitution to restore all Class members all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair or fraudulent business act or practice, untrue or misleading advertising, plus pre- and post-judgment interest thereon;

H.    That the Court order Defendants to disgorge all money wrongfully obtained and all

-34-

DOCUMENT PREPARED
ON RECYCLED PAPER

revenues and profits derived by Defendants as a result of their acts or practices as alleged in this Complaint;

  I.  That the Court award damages to Plaintiff and the Class to compensate them for the conduct alleged in this Complaint under all causes of action that allow for damages, specifically excluding damages under the CLRA at this juncture;

  J.  That the Court award punitive damages pursuant to California Civil Code § 1780(a)(4);

  K.  That the Court grant Plaintiff his reasonable attorneys' fees and costs of suit pursuant to California Code of Civil Procedure § 1021.5, California Civil Code § 1780(d), the common fund doctrine, or any other appropriate legal theory; and

  L.  That the Court grant such other and further relief as may be just and proper.

## JURY DEMAND

  Plaintiff demands a trial by jury on all causes of action so triable.

Dated: August 2, 2019     Respectfully submitted,

             LEXINGTON LAW GROUP


             */s/ Ryan Berghoff*
             Eric Somers (State Bar No. 139050)
             Ryan Berghoff (State Bar No. 308812)
             LEXINGTON LAW GROUP
             503 Divisadero Street
             San Francisco, CA 94117
             Telephone: (415) 913-7800
             Facsimile: (415) 759-4112
             esomers@lexlawgroup.com
             rbergoff@lexlawgroup.com

             Attorneys for Plaintiff
             JEFFREY FREEMAN

# Exhibit 1

 Right-click here to download pictures. To help protect your privacy, Outlook prev...

# YOUR ORDER IS HEADED TO THE TAILOR

Thanks for your order! Your custom-made garments are on their way to the tailors and we estimate the shipping date to be **within approximately 4 weeks**. We'll notify you by email if there are any issues with your order.

## NEED TO MAKE ANY CHANGES?

Change requests such as fabric, customizations, measurement will only be accepted within 1 business day of your order. Change requests can only be made **by calling us directly at 1-855-334-0788**. While every effort will be made to apply your change requests, changes to your order after purchase are not guaranteed.

## NEED TO CANCEL YOUR ORDER?

Cancellations will only be accepted within 1 business day of

Cancellations will only be accepted within 1 business day of your order. Cancellation requests can only be made **by calling us directly at 1-855-334-0788**. Cancellation requests submitted by email or made AFTER 1 business day will not be accepted.

Follow this link within 24 hours if you need to adjust your customizations.

## ORDER 12854019

### SUMMARY

| Premium Navy Suit | $349.00 |
|---|---|

| **Jacket** | |
|---|---|
| Lapels | Notch |
| Vents | Two |
| Buttons | Two |
| Pockets | Pocket Flaps |
| Lining | Plum Polka Dot |
| Pick Stitching | No |
| Waist Pocket | No |
| Pen Pocket | Yes |
| Functional Sleeve Buttonholes | No |
| Functional Boutonniere | No |
| Collar Felt Color | Match |
| Buttonholes Color | Match |
| Monogram Line 1 | Custom Made For |
| Monogram Line 2 | Jeff Freeman |
| Monogram Style | Times Roman |

| | Roman |
| --- | --- |
| Monogram Color | White |
| Pleats | None |
| Suspender Buttons | No |
| 1.5" Pant Cuffs | No |
| Waistband | Belt Loops |

| | |
| --- | --- |
| Discount: | $450 |
| Tax: | $29.66 |
| Shipping: | FREE |
| **Total:** | **$378.66 USD** |
| Paid By: | Credit Card |

Please retain this invoice for your records.

Please note: If your order is pending payment it will be held until payment is completed.



New Arrivals
Suits
Shirts
Get $50
Blog

SHOWROOMS    FREE SHIPPING    FIT PROMISE
Come visit us    On all orders    We won't rest
in person    over $150    until it fits

Vancouver•Toronto•New York City•San Francisco
Philadelphia•Beverly Hills•Boston

For assistance email help@indochino.com.
This email was sent by: Indochino 300-970 Homer Street Vancouver, BC, V6B 2W7, CA

| Microsoft Outlook | 12:33:05 PM 5/20/2019 |
| 14.0.7233.0 | Windows 7 Professional 64-bit Build 7601 |

# Exhibit 2

| | | | |
|---|---|---|---|
| ✉ | Chris Tate \| INDOCHINO | Your Luxury Suit offer ends midnight... | Thu 4/25/2019 3:19 PM |
| ✉ | INDOCHINO | :-) consider this your invitation: April Clearance until tomorrow | Fri 4/26/2019 7:32 AM |
| ✉ | INDOCHINO | :-) consider this your invitation: April Clearance until tomorrow | Sat 4/27/2019 8:02 AM |
| ✉ | Chris from INDOCHINO | You're missing out. April Clearance is on... | Sat 4/27/2019 3:22 PM |
| ✉ | INDOCHINO | April Clearance suits ends tonight | Sun 4/28/2019 8:03 AM |
| ✉ | Chris from INDOCHINO | ATTENTION ▢! Last chance for $299 Clearance Suits. | Sun 4/28/2019 2:17 PM |
| ✉ | INDOCHINO | [EXTENDED] April Clearance sale continues... | Mon 4/29/2019 3:02 AM |
| ✉ | Chris from INDOCHINO | ☺ We seriously did this. EXTENDED SALE on $299 Clearance Suits | Mon 4/29/2019 3:19 PM |
| ✉ | INDOCHINO | ☻ Absolutely crazy! Such a treat right here: Our favorite Spring Suits from $329 | Tue 4/30/2019 7:55 AM |
| ✉ | Chris Tate \| INDOCHINO | ▤ Add a touch of luxury to your style for $499 | Tue 4/30/2019 4:46 PM |
| ✉ | INDOCHINO | ▢ Better hurry. Our favorite Spring Suits sale ends midnight | Wed 5/1/2019 8:22 AM |
| ✉ | Chris from INDOCHINO | ✂ ▢ 2 Premium Suits for $729. Only for a limited time! | Wed 5/1/2019 3:24 PM |
| ✉ | INDOCHINO | ► Not kidding! We extended this sale for you | Thu 5/2/2019 7:32 AM |
| ✉ | The INDOCHINO Team | 6 hours left! Last chance for these Spring favorites | Thu 5/2/2019 2:46 PM |
| ✉ | INDOCHINO | You're the first to know! Up to 60% off Starts Now ))) | Fri 5/3/2019 8:04 AM |
| ✉ | Chris from INDOCHINO | We seriously did it... ▤▢ 2 Suits for $729 | Fri 5/3/2019 1:32 PM |
| ✉ | INDOCHINO | ▢ These well-priced seasonal suits are almost gone | Sat 5/4/2019 1:02 AM |
| ✉ | INDOCHINO | ♦ New offer added ends midnight! Suits from $296 | Sun 5/5/2019 7:32 AM |
| ✉ | Chris Tate \| INDOCHINO | ♣ Happy Cinco de Mayo! Special deals inside... | Sun 5/5/2019 3:17 PM |
| ✉ | INDOCHINO | ☻ Unlocked! Because you missed out! Sitewide savings up to 60% | Mon 5/6/2019 8:03 AM |
| ✉ | Chris from INDOCHINO | BREAKING ▢▢ We've Extended our Ultimate Spring Sale! | Mon 5/6/2019 3:13 PM |
| ✉ | INDOCHINO | 3▢▢ days only - these ACE suits are on sale | Tue 5/7/2019 7:32 AM |
| ✉ | Chris from INDOCHINO | ▸ ▢ This one's for you! Our BEST suits up to 60% off! | Tue 5/7/2019 2:22 PM |
| ✉ | INDOCHINO | The crème de la hem! \| On sale now | Wed 5/8/2019 8:06 AM |
| ✉ | INDOCHINO | ;-) Hey, are you busy? We're treating you to a special offer on Premium Suits. | Thu 5/9/2019 7:29 AM |
| ✉ | INDOCHINO | ☻ Hello! You just unlocked a super special offer! Premium Suits for $389 | Fri 5/10/2019 8:05 AM |
| ✉ | INDOCHINO | WOO! You made the invite list for an offer: A HUGE sale with all premium suits for $... | Sat 5/11/2019 7:03 AM |
| ✉ | INDOCHINO | Breaking news ▢ You've got an offer on Clearance Suits waiting right here... | Sun 5/12/2019 7:33 AM |
| ✉ | INDOCHINO | CORRECT ▢ You're in luck as this sale is extended! | Mon 5/13/2019 7:30 AM |
| ✉ | Chris Tate \| INDOCHINO | Just for you! ☻ Save up to $96 on new shirts! | Mon 5/13/2019 3:39 PM |
| ✉ | INDOCHINO | We're dishing out the savings. Save up to $470 | Tue 5/14/2019 7:34 AM |
| ✉ | The INDOCHINO Team | Relax and try on these casual custom fit shirts | Tue 5/14/2019 2:23 PM |
| ✉ | INDOCHINO | ✉ Seriously! You've been selected to enjoy: 48 hour sale ends tonight with savings ... | Wed 5/15/2019 7:39 AM |
| ✉ | INDOCHINO | ➡ E.X.T.E.N.D.E.D ➡ Last chance for these style suits | Thu 5/16/2019 7:02 AM |
| ✉ | Chris from INDOCHINO | EXTENDED! ☞ Our 48 Hour Special continues for 1 more day! | Thu 5/16/2019 3:32 PM |

| | | | |
|---|---|---|---|
| ✉ | INDOCHINO | You're just in time for these Premium Suits deal... | Fri 5/17/2019 8:02 AM |
| ✉ | Chris from INDOCHINO | We love You! 24hrs until our Chill deal | Fri 5/17/2019 2:20 PM |
| ✉ | INDOCHINO | Surprise! We seem to have dropped an offer... | Sat 5/18/2019 2:03 AM |
| ✉ | INDOCHINO | Surprise! We seem to have dropped an offer... | Sat 5/18/2019 2:03 AM |
| ✉ | INDOCHINO | This ends tonight! Save up to 60% off | Sun 5/19/2019 7:33 AM |
| ✉ | Chris from INDOCHINO | 🎬🎬 Final episode for GoT and final chance for up to 60% off suits tonight | Sun 5/19/2019 3:13 PM |
| ✉ | INDOCHINO | 🎬 Action is needed to enjoy a special sales event—trust Us | Mon 5/20/2019 8:03 AM |
| ✉ | Chris from INDOCHINO | We've EXTENDED our Right Place Right Time event! | Mon 5/20/2019 3:17 PM |
| ✉ | Chris from INDOCHINO | We've EXTENDED our Right Place Right Time event! | Mon 5/20/2019 3:17 PM |
| ✉ | INDOCHINO | ;-) Good day! You've got an offer on these seasonal styles | Tue 5/21/2019 8:04 AM |
| ✉ | The INDOCHINO Team | 🔎 We don't want you to miss out! 48 hours to have our new seasonal styles | Tue 5/21/2019 3:01 PM |
| ✉ | INDOCHINO | [ ENDS TONIGHT ] Your last chance to style up in our new SEASONAL fabrics | Wed 5/22/2019 7:34 AM |
| ✉ | Chris from INDOCHINO | 🎬 This never happens! Luxury Suits Special starting at $399 only for today! | Wed 5/22/2019 3:36 PM |
| ✉ | INDOCHINO | ⇨ Jackpot! You're the first to know. Early access to Memorial Day Sale | Thu 5/23/2019 8:04 AM |
| ✉ | Aly Habib | INDOCHINO | Special offer! 5 Days only for VIP Corporate Partners | Thu 5/23/2019 11:32 AM |
| ✉ | INDOCHINO | 🖥🖥 Incoming! You're about to land an offer for the Memorial Day Sale | Fri 5/24/2019 12:32 AM |
| ✉ | INDOCHINO | 🎬 Drop. Everything. You just acquired something great: Suits at up to 70% Off | Sat 5/25/2019 8:05 AM |
| ✉ | INDOCHINO | 💧 Newly added! Clearance Suits deal for our Memorial Day Sale | Sun 5/26/2019 7:33 AM |
| ✉ | Chris from INDOCHINO | You're entitled to this - Suits starting at $299 USD | Sun 5/26/2019 2:12 PM |
| ✉ | INDOCHINO | Memorial Day Sale E.X.T.E.N.D.E.D | Mon 5/27/2019 7:20 AM |
| ✉ | Chris from INDOCHINO | Memorial Day Weekend Sale Ends tonight - Suits starting at $299 USD | Mon 5/27/2019 2:15 PM |
| ✉ | INDOCHINO | ③②① YES! We're giving you more time: Our Memorial Day Sale is extended for 24... | Tue 5/28/2019 8:08 AM |
| 📨 | INDOCHINO | You're the first to know! Our May Clearance Sale is here | Wed 5/29/2019 3:02 PM |
| 📨 | INDOCHINO | Time to look awesome! Here are styles for you during the May Clearance event | Thu 5/30/2019 7:34 AM |
| ✉ | Chris Tate | INDOCHINO | Luxury Suits at $399 ($100 off) is more hype than a certain Canadian rapper at a 🎬 g... | Thu 5/30/2019 2:50 PM |
| ✉ | INDOCHINO | [Open Soon!] We've added more suits for May Clearance 😊 | Fri 5/31/2019 11:04 AM |
| ✉ | Chris from INDOCHINO | ♣ You deserve this sale. Suits from $349! | Fri 5/31/2019 3:37 PM |
| 📨 | Chris from INDOCHINO | ♣ You deserve this sale. Suits from $349! | Fri 5/31/2019 3:37 PM |
| 📨 | INDOCHINO | 🖥 BRACE YOURSELF : May Clearance is definitely something to get excited about | Sat 6/1/2019 8:24 AM |
| ✉ | Chris from INDOCHINO | We just did it! 😄 6 hours left for our Extended May Clearance Event | Sat 6/1/2019 2:12 PM |
| 📨 | INDOCHINO | Seize the deal! Happy Hour Sale is on! Suits for $299 ))) | Sun 6/2/2019 7:48 AM |
| ✉ | Chris from INDOCHINO | Check out our Happy Hour before Game 2 of the 🏆 Finals! Suits at $299 | Sun 6/2/2019 3:12 PM |
| ✉ | INDOCHINO | EXTENDED | Happy Hour Sale ends midnight! | Mon 6/3/2019 7:32 AM |
| 📨 | Chris from INDOCHINO | 💧 6 hours left | EXTENDED Happy Hour sale! | Mon 6/3/2019 2:14 PM |
| 📨 | INDOCHINO | Alert 🔔 Our Most Popular Collection from $369 | Tue 6/4/2019 7:33 AM |
| 📨 | Chris from INDOCHINO | 🎬 JACKPOT! Luxury suits on sale for just $399! | Tue 6/4/2019 2:17 PM |

| | | | |
|---|---|---|---|
| ✉ | INDOCHINO | You've got first dibs on this. Premium Suits from $369 | Wed 6/5/2019 3:38 AM |
| ✉ | Chris from INDOCHINO | What's crazier than a Dubs fan tonight? 2 Suits for $599! | Wed 6/5/2019 3:17 PM |
| ✉ | Chris from INDOCHINO | What's crazier than a Dubs fan tonight? 2 Suits for $599! | Wed 6/5/2019 3:17 PM |
| ✉ | INDOCHINO | ⏳ 24 hours left! Last chance on this premium suit offer | Thu 6/6/2019 8:05 AM |
| ✉ | Chris from INDOCHINO | Buy 4 Shirts Get 1 FREE! Your exclusive offer is inside | Thu 6/6/2019 2:19 PM |
| ✉ | Chris from INDOCHINO | Buy 4 Shirts Get 1 FREE! Your exclusive offer is inside | Thu 6/6/2019 2:19 PM |
| ✉ | INDOCHINO | ➤➤ (1) friendly message from Indochino! Extended! Suits from $349 | Fri 6/7/2019 8:29 AM |
| ✉ | Chris from INDOCHINO | ☀️ Sun's out, suits out! Summer suits from $329 | Fri 6/7/2019 1:14 PM |
| ✉ | INDOCHINO | 48 hour special sale starts today! Premium Suits from $369 | Sat 6/8/2019 7:32 AM |
| ✉ | Chris Tate \| INDOCHINO | Stand out in style with these summer suits for only $329! | Sat 6/8/2019 3:12 PM |
| ✉ | INDOCHINO | 48 Hour Sale Ends Midnight! Custom Suits from $299 | Sun 6/9/2019 7:44 AM |
| ✉ | Chris Tate \| INDOCHINO | You ready for this ⏳? Last chance for our 48 Hour Special! | Sun 6/9/2019 3:17 PM |
| ✉ | INDOCHINO | Extended for 24 hours more! Shop custom suits from $299 | Mon 6/10/2019 3:17 AM |
| ✉ | Chris from INDOCHINO | Just for you! 😄 We've EXTENDED our 48 Hour Special! | Mon 6/10/2019 3:10 PM |
| ✉ | INDOCHINO | Take a look. Up to 60% off every collection | Tue 6/11/2019 7:33 AM |
| ✉ | The INDOCHINO Team | Here you go. Find out this sale before fabrics are gone | Tue 6/11/2019 4:31 PM |
| ✉ | The INDOCHINO Team | Here you go. Find out this sale before fabrics are gone | Tue 6/11/2019 4:31 PM |
| ✉ | INDOCHINO | ➤ Every. Suit. On. Sale. Up to 60% off every suit | Wed 6/12/2019 7:19 AM |
| ✉ | Chris from INDOCHINO | You've earned this. Limited run suits starting at $329! | Wed 6/12/2019 3:54 PM |
| ✉ | Chris from INDOCHINO | You've earned this. Limited run suits starting at $329! | Wed 6/12/2019 3:54 PM |
| ✉ | INDOCHINO | EXTENDED 🎉🎉 Trust us, you're going to LOVE this sweet offer. Up to 60% off select s... | Thu 6/13/2019 7:37 AM |
| ✉ | Chris from INDOCHINO | Suits from $329 - As amazing as the Dubs chasing a 3-peat this year! | Thu 6/13/2019 3:13 PM |
| ✉ | Chris from INDOCHINO | Suits from $329 - As amazing as the Dubs chasing a 3-peat this year! | Thu 6/13/2019 3:13 PM |
| ✉ | INDOCHINO | Hey! Get a Premium Suit for $369 during the Father's Day Sale | Fri 6/14/2019 7:39 AM |
| ✉ | Chris from INDOCHINO | Celebrate Father's Day by giving him Custom Shirts! | Fri 6/14/2019 3:17 PM |
| ✉ | INDOCHINO | Father's Day isn't until tomorrow but we have an offer for you! | Sat 6/15/2019 8:03 AM |
| ✉ | INDOCHINO | Limited Run Suits from $299 \| Our Treat for Father's Day | Sun 6/16/2019 7:50 AM |
| ✉ | Chris from INDOCHINO | Father's Day Special - Suits starting at $299 | Sun 6/16/2019 3:17 PM |
| ✉ | INDOCHINO | ⏳ Breaking NOW! We're totally verifying this offer: Father's Day Sale ends tonight | Mon 6/17/2019 7:54 AM |
| ✉ | Chris from INDOCHINO | Father's Day Special suit ends tonight! Get a suit from $299 | Mon 6/17/2019 3:20 PM |
| ✉ | INDOCHINO | 🌞🌞Here comes the sun. Our Summer sale is here | Tue 6/18/2019 7:47 AM |
| ✉ | The INDOCHINO Team | ☀️ This deal will give your Summer wardrobe a boost | Tue 6/18/2019 3:32 PM |
| ✉ | The INDOCHINO Team | ☀️ This deal will give your Summer wardrobe a boost | Tue 6/18/2019 3:32 PM |
| ✉ | INDOCHINO | 🌞 Hurry, this ends tonight! Style up for the upcoming season | Wed 6/19/2019 7:39 AM |
| ✉ | INDOCHINO | ✉️ Yes! You've unlocked an offer on Seasonal Suits | Thu 6/20/2019 7:46 AM |
| ✉ | Chris from INDOCHINO | 🍾 Tonight's your night, RJ Barrett 🍾 | Thu 6/20/2019 11:20 AM |

| | Chris from INDOCHINO | ♟ Tonight's your night, RJ Barrett ♟ | Thu 6/20/2019 11:20 AM |
|---|---|---|---|
| | INDOCHINO | Your Premium Suits | 6/21/2019 7:48 AM |
| | **INDOCHINO** | **Semi-Annual Sale is happening. Premium Suits from $369** | **Sat 6/22/2019 7:32 AM** |
| | Chris from INDOCHINO | Congratulations RJ Barrett on joining the NYK! ♟ | Sat 6/22/2019 10:03 AM |
| | **INDOCHINO** | **This is worth it! Check out these custom suits for $299** | **Sun 6/23/2019 7:33 AM** |
| | **INDOCHINO** | **Here, have an extra day on our Semi-Annual Sale** | **Mon 6/24/2019 8:17 AM** |
| | The INDOCHINO Team | ☺ Only hours left on this EXTENDED semi annual sale | Mon 6/24/2019 3:49 PM |
| | **Chris from INDOCHINO** | **☐ Wow! Our Carlisle collection is on sale for only $349!** | **Tue 6/25/2019 3:20 PM** |
| | **Chris from INDOCHINO** | **☐ Wow! Our Carlisle collection is on sale for only $349!** | **Tue 6/25/2019 3:20 PM** |
| | INDOCHINO | ③②① 24 more hours to have custom suits from $349! Skip the racks and go custom | Wed 6/26/2019 7:42 AM |
| | INDOCHINO | ☐ WOW! Select colors of our best selling suit, the Hemsworth for only $349! | Wed 6/26/2019 3:10 PM |
| | INDOCHINO | 📢 Best. News. Ever. June Blowout Starts today! | Thu 6/27/2019 7:42 AM |
| | Chris from INDOCHINO | Don't miss out on our June Blowout Sale. Suits starting from $329 | Thu 6/27/2019 3:24 PM |
| | **INDOCHINO** | **It is really happening! June Blowout sale is on 👉** | **Fri 6/28/2019 1:32 AM** |
| | **INDOCHINO** | **48hours left on June Blowout sale! All premium suits from $349** | **Sat 6/29/2019 7:32 AM** |
| | INDOCHINO | June Blowout ENDS TONIGHT! Best Selling Suits from $329 | Sun 6/30/2019 7:50 AM |

▲ **Date: Last Month**

| | **INDOCHINO** | **③②① Hey! You got one more chance to have these Best Selling Suits from $329** | **Mon 7/1/2019 6:47 AM** |
|---|---|---|---|
| | **Chris from INDOCHINO** | **👔 Best suits of the season on sale for only $349!** | **Tue 7/2/2019 3:12 PM** |
| | **Chris from INDOCHINO** | **👔 Best suits of the season on sale for only $349!** | **Tue 7/2/2019 3:12 PM** |
| | INDOCHINO | ♦ Not even kidding: This 24 hour special sale is definitely a must-see. | Wed 7/3/2019 12:41 AM |
| | INDOCHINO | Happy 4th of July! Up to 70% off Starts Today | Thu 7/4/2019 7:32 AM |
| | Randy Binning | INDO... | Don't wait any longer. Book an appointment to get in on the 4th of July Sale | Thu 7/4/2019 12:43 PM |
| | INDOCHINO | ☐☐ Just added! You're getting Early Access to $299 Limited Run Suits | Fri 7/5/2019 7:48 AM |
| | INDOCHINO | It's almost over! Limited Run Suits for $299 | Sat 7/6/2019 7:49 AM |

▲ **Date: Three Weeks Ago**

| | INDOCHINO | Get in on this before it's over! Limited Run Suits for $299 | Sun 7/7/2019 12:33 AM |
|---|---|---|---|
| | INDOCHINO | FINAL CALL: $50 off Luxury Suits for 4th of July Sale ends tonight | Mon 7/8/2019 8:02 AM |
| | The INDOCHINO Team | ☐ You're missing out and this ends midnight! Luxury Suit for $449 | Mon 7/8/2019 3:01 PM |
| | The INDOCHINO Team | ☐ You're missing out and this ends midnight! Luxury Suit for $449 | Mon 7/8/2019 3:01 PM |
| | INDOCHINO | This ends tonight! Premium Suits from $379. Save up to $420 | Wed 7/10/2019 7:43 AM |
| | **Chris from INDOCHINO** | **😀 Epic Win! $100 OFF one of our most luxurious suits - The Harrogate** | **Wed 7/10/2019 3:09 PM** |
| | **Chris from INDOCHINO** | **😀 Epic Win! $100 OFF one of our most luxurious suits - The Harrogate** | **Wed 7/10/2019 3:09 PM** |
| | **INDOCHINO** | **☐☐ NOT a drill! One more chance to suit up with our best selling suits from $379** | **Thu 7/11/2019 3:42 AM** |

| | | | |
|---|---|---|---|
| ✉ | Chris from INDOCHINO | Our luxurious Hamilton suit is on sale for only $379! | Thu 7/11/2019 2:32 PM |
| ✉ | INDOCHINO | Thank you! Rock Star Suit - Seasonal Suits | Fri 7/12/2019 1:46 AM |
| ✉ | Chris from INDOCHINO | 🎁 You've earned it! Get any Seasonal suit for $329! | Fri 7/12/2019 1:47 PM |
| ✉ | INDOCHINO | Try to ignore this! Great deals on Premium Suits for $379 | Sat 7/13/2019 3:32 AM |
| ✉ | Chris Tate | INDOCHINO | One of our best patterned suits on sale - The Hartford for only $379 | Sat 7/13/2019 3:12 PM |

▲ Date: Two Weeks Ago

| | | | |
|---|---|---|---|
| ✉ | INDOCHINO | 🥎 Suit up like an All Star! Highest Ranked Seasonal Suits for $329 | Sun 7/14/2019 12:47 AM |
| ✉ | Chris from INDOCHINO | 🏌️🏌 Now's your chance! Last call for Seasonal suits at $329 | Sun 7/14/2019 2:14 PM |
| ✉ | INDOCHINO | This sale is EXTENDED! Be ready for Prime Time with Seasonal Suits for $329 | Mon 7/15/2019 7:41 AM |
| ✉ | Chris from INDOCHINO | Just for you! Don't need to be a 'Prime' member for other great online deals - Suits ... | Mon 7/15/2019 3:12 PM |
| ✉ | INDOCHINO | 🔒 Unlocked! The SALE that adds style to your look - Premium Suits for $379 | Tue 7/16/2019 3:40 AM |
| ✉ | Chris from INDOCHINO | 🎁 Here's your BIG score! Our best-selling Hemsworth suit is on sale for $379 | Tue 7/16/2019 3:22 PM |
| ✉ | INDOCHINO | Last Day! Custom Suit Event ends tonight! Shop our Premium Suits for $379 | Wed 7/17/2019 7:24 AM |
| ✉ | Chris from INDOCHINO | 🎁 Limited time sale, solid custom suits for only $329! | Wed 7/17/2019 3:22 PM |
| ✉ | INDOCHINO | 🎁🎁 BIG Sale Alert! Custom Suits for $299 | Thu 7/18/2019 7:19 AM |
| ✉ | INDOCHINO | Still waiting? The $299 suit sale continues with over 100 suits on sale | Fri 7/19/2019 6:33 AM |
| ✉ | Chris from INDOCHINO | It's your lucky day! 🎣 Featuring custom suits from $299 | Fri 7/19/2019 12:35 PM |
| ✉ | INDOCHINO | Not Kidding! Suits for $299 and they're almost GONE | Sat 7/20/2019 7:49 AM |
| ✉ | INDOCHINO | Not Kidding! Suits for $299 and they're almost GONE | Sat 7/20/2019 7:49 AM |

▲ Date: Last Week

| | | | |
|---|---|---|---|
| ✉ | INDOCHINO | This just got better! New suits added for the $299 Suit Sale | Sale ends midnight | Sun 7/21/2019 8:25 AM |
| ✉ | Chris from INDOCHINO | 🌀 Happening now! Custom suits from $299 | Sun 7/21/2019 2:12 PM |
| ✉ | INDOCHINO | [ SALE EXTENDED ] Bonus chance to shop $299 Suit Sale | Mon 7/22/2019 2:32 AM |
| ✉ | Chris from INDOCHINO | 🎁 You've been awarded! View the best of our EXTENDED $299 Suit Sale! | Mon 7/22/2019 3:22 PM |
| ✉ | Chris from INDOCHINO | 🎁 You've been awarded! View the best of our EXTENDED $299 Suit Sale! | Mon 7/22/2019 3:22 PM |
| ✉ | INDOCHINO | You got this! In-Season Suits from $319 👔 | Tue 7/23/2019 8:19 AM |
| ✉ | The INDOCHINO Team | Custom fitting shirts for all occasions! Shirts bundle offer inside | Tue 7/23/2019 3:19 PM |
| ✉ | The INDOCHINO Team | Custom fitting shirts for all occasions! Shirts bundle offer inside | Tue 7/23/2019 3:19 PM |
| ✉ | INDOCHINO | 😁 No tricks! We really urge you to check THIS out: Up to 60% off Seasonal Suits | Wed 7/24/2019 2:41 AM |
| ✉ | INDOCHINO | [EXTENDED] Last chance to suit up with these seasonal styles before they're gone | Thu 7/25/2019 7:41 AM |
| ✉ | The INDOCHINO Team | Space Is Limited! Our Fall Event is Coming. RSVP Today! | Thu 7/25/2019 5:23 PM |
| ✉ | INDOCHINO | It's here! Suits from $299 for our July Clearance Event | Fri 7/26/2019 7:39 AM |
| ✉ | INDOCHINO | 2 Days Left! Limited Inventory on $299 Suits | Sat 7/27/2019 1:51 AM |